UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×

DERRICK CAMPBELL, *for himself*
*and on behalf of all others similarly situated*,

        *Plaintiff*,

        *v.*

EMPIRE MERCHANTS, LLC,

        *Defendant*.

------------------------------------------------------------------------×

16 CV 5643

**CLASS ACTION COMPLAINT**

Plaintiff Derrick Campbell, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant Empire Merchants, LLC as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Derrick Campbell ("Plaintiff" or "Mr. Campbell"), for himself and on behalf of all others similarly situated, seeks damages and costs against Defendant Empire Merchants, LLC ("Defendant" or "Empire"), for unpaid overtime, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219.

2. Plaintiff also seeks damages and costs against Defendant for (i) unpaid overtime, (ii) unpaid spread of hours, (iii) failure to pay wages, and (iv) failure to keep records, in violation of the New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 1–1200.

3. Plaintiff, individually, also seeks damages and costs against Defendant for discriminating against him based on his gender by terminating his employment, in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendant violated Plaintiff's rights under the FLSA.

5. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYLL and NYCHRL, as they are so related to the FLSA claims that they form part of the same case or controversy.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

**PARTIES**

7. Plaintiff, at all times relevant hereto, was and is a resident of Queens County in the State of New York.

8. Upon information and belief, at all times relevant hereto, Defendant was and is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 16 Bridgewater St., Brooklyn, New York 11222 (the "Warehouse").

9. As an employee of Defendant, Plaintiff worked in Defendant's building, where goods, namely wine and spirits, are received from outside the State of New York before being distributed throughout the State of New York.

10. Defendant has more than two (2) employees and an annual gross volume of sales in excess of five hundred thousand dollars ($500,000).

**STATEMENT OF FACTS**

11. On or about March 30, 2016, Empire, a liquor distributor, hired Mr. Campbell as a Warehouse worker, commonly referred to as a "shape-up" employee, after receiving Mr. Campbell's employment application at Empire's weekly open house.

12. "Shape-up" employees' job responsibilities included various cleaning and landscaping tasks in and around the Warehouse—such as mowing grass, trimming bushes, and

sweeping—and working with Empire's delivery drivers to unload deliveries to Empire's customers from Empire's delivery trucks.

13. On April 4, 2016, Mr. Campbell began working for Empire.

14. Throughout his employment, Mr. Campbell was a reliable employee who consistently fulfilled his job responsibilities.

15. Shape-up employees were paid thirteen dollars ($13.00) per hour for work done in and around the Warehouse and fourteen dollars ($14.00) per hour for work done on Empire's delivery trucks.

16. Shape-up employees were compensated at one and a half (1.5) times their regular hourly rate for scheduled hours worked in excess of eight (8) in a single work day.

17. Empire did not compensate shape-up employees at all for hours worked before their scheduled shifts.

18. As a result, Empire did not compensate shape-up employees at the overtime premium rate for hours worked in excess of forty (40) in a work week.

**I. Wage & Hour Claims**

19. Mr. Campbell did not make hiring or firing decisions, develop Empire policy, discipline Empire's employees, or complete forms on Empire's behalf.

20. Mr. Campbell's supervisors and managers directed Empire's day-to-day operations: they managed the Warehouse; assigned daily duties to Mr. Campbell; handled any complaints, whether from customers, vendors, or others; and decided what items Empire would purchase and negotiated prices.

21. As such, Mr. Campbell did not fall under any exemption for overtime pay under the FLSA or NYLL throughout his employment at Empire.

22. Mr. Campbell did not have a fixed weekly schedule while working for Empire.

23. During the period beginning April 3, 2016, and ending April 9, 2016, Mr. Campbell was scheduled to work eight (8) hours over the course of one (1) day and was paid for those hours.

24. During the period beginning April 10, 2016, and ending April 16, 2016, Mr. Campbell was scheduled to work ten and a half (10.5) hours over the course of one (1) day and was paid for those hours.

25. During the period beginning May 1, 2016, and ending May 7, 2016, Mr. Campbell was scheduled to work twenty-five and three-quarters (25.75) hours over the course of three (3) days and was paid for those hours.

26. During the period beginning May 8, 2016, and ending May 14, 2016, Mr. Campbell was scheduled to work forty-five and one-quarter (45.25) hours over the course of five (5) days and was paid for those hours.

27. During the period beginning May 29, 2016, and ending June 4, 2016, Mr. Campbell was scheduled to work thirty-three and one-quarter (33.25) hours over the course of four (4) days and was paid for those hours.

28. During the period beginning June 5, 2016, and ending June 11, 2016, Mr. Campbell was scheduled to work thirty-three and a half (33.5) hours over the course of four (4) days and was paid for those hours.

29. During the period beginning June 12, 2016, and ending June 18, 2016, Mr. Campbell was scheduled to work thirty-two and a half (32.5) hours over the course of four (4) days and was paid for those hours.

30. During the period beginning June 19, 2016, and ending June 25, 2016, Mr. Campbell was scheduled to work thirty-four and a half (34.5) hours over the course of four (4) days and was paid for those hours.

31. During the period beginning June 26, 2016, and ending July 2, 2016, Mr. Campbell was scheduled to work eleven and a quarter (11.25) hours and was paid for those hours.

32. Empire instructed Mr. Campbell to arrive at the Warehouse between 5:30 a.m. and 6:00 a.m. on each day he worked.

33. Upon arriving at the Warehouse, Empire directed Mr. Campbell to check in and wait to be assigned work.

34. Empire had three (3) morning shifts for shape-up employees: shifts began at 7:00 a.m., 8:00 a.m., and 9:00 a.m.

35. After checking in, Mr. Campbell could not leave the Warehouse or use the waiting time for his own purposes.

36. Mr. Campbell's waiting was for Empire's primary benefit, as his waiting allowed Empire to have an immediately accessible workforce.

37. At all times after checking in, Mr. Campbell was ready, willing, and able to work.

38. If Mr. Campbell was not assigned work by the beginning of the third shift at 9:00 a.m., Empire instructed him to go home without pay.

39. As a result, Mr. Campbell spent approximately one (1) to three and a half (3.5) hours engaged to wait without compensation each day that he worked.

40. As a result, Mr. Campbell spent between four (4) hours and seventeen and a half (17.5) hours per week engaged to wait each week.

41. Empire never compensated Mr. Campbell whatsoever for his time spent engaged to wait, much less at the overtime premium rate, in violation of the FLSA and NYLL.

42. As Mr. Campbell was a non-exempt employee, he was entitled to overtime premium pay for all hours worked in excess of forty (40) in a workweek.

43. Empire also failed to provide Mr. Campbell with "spread of hours" pay throughout his employment.

44. Combining scheduled hours and time spent engaged to wait, Mr. Campbell regularly worked at least ten (10) hours in a workday throughout his employment at Empire, yet Empire failed to pay him one (1) additional hour of pay at the minimum wage for each day that he worked at least ten (10) hours.

45. Empire also failed to adhere to the notice and record-keeping requirements set forth in NYLL § 195 by failing to:

   i. provide Mr. Campbell, upon his hiring, a notice informing him of his hourly rate of pay (including the overtime premium rate), any allowances, the regular payday designated by Empire, and Empire's address and telephone number;

   ii. notify Mr. Campbell in writing or by publicly posting its policy on sick leave, vacation, personal leave, holidays and hours; and

   iii. notify Mr. Campbell of the termination of his employment, in writing, including the exact date of his termination.

**II. Gender Discrimination and Wrongful Termination Claims**

46. On or around June 22, 2016, Mr. Campbell was called in for a meeting with his supervisor, known to Mr. Campbell only as "Mike."

47. In this meeting, Empire informed Mr. Campbell that he was being terminated because two female employees had claimed that Mr. Campbell had sexually harassed them.

48. Shocked by this statement, as nothing of the sort had occurred, Mr. Campbell asked what the purported "harassment" was.

49. Empire stated that the female employees claimed that Mr. Campbell had said, "Shake that booty, girl," to one of the employees.

50. Mr. Campbell vehemently denied this allegation—as he had never said anything of the kind—and explained that, in his only interaction with the employee in question, he had merely said, "Good morning," as she was entering the Warehouse.

51. In addition, two other Empire employees, who had both witnessed the interaction, supported Mr. Campbell and informed Empire that Mr. Campbell had never harassed any Empire employee.

52. Mr. Campbell requested that Empire reconsider its decision to terminate him, as the harassment allegations were entirely false.

53. However, Empire dismissed Mr. Campbell's request and told him that Empire stood by its decision to terminate him, telling him, "We have to take the women's side in this situation."

54. Empire willfully and maliciously terminated Mr. Campbell's employment because he is male.

55. Empire has refused to provide a written explanation for Mr. Campbell's termination, despite Mr. Campbell's repeated requests.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this collective action against Defendant pursuant to § 216(b) of the FLSA, on behalf of all current and former employees of Defendant whom Defendant failed to compensate at the overtime premium rate for hours worked in excess of forty (40) in a work week.

57. While the exact number of Class members is presently unknown, it is estimated that there are hundreds of members in the putative Class.

58. The group of putative Class members is so numerous as to make it impracticable to bring them all before the Court, for which reason Plaintiff initiates this litigation for all persons similarly situated pursuant to § 216(b).

59. Despite the numerical size of the Class, the identities of the Class members can be ascertained through Defendant's payroll records.

60. Plaintiff and his counsel do not anticipate any difficulties in the management of this action as a class action.

61. Plaintiff is committed to vigorous prosecution of this action, will adequately represent the purported Class in this action, and has retained competent counsel experienced in class action litigation.

62. Plaintiff is a Class member and has no interest antagonistic to or in conflict with other Class members.

63. This action raises questions of law and fact which are of common and general interest to the Class members.

64. The claims or defenses of the represented parties are typical of the claims or defenses of the Class.

65. Plaintiff has the same interests as the other Class members in prosecuting the claims against Defendant.

66. Plaintiff and all the members of the Class sustained damages as a result of Defendant's wrongful conduct. All other shape-up employees also arrived before the beginning of the first shift to wait to be assigned work.

67. No shape-up employees were paid for this time spent engaged to wait.

68. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69. Furthermore, due to the expense and burden of individual litigation, it would be extraordinarily difficult for Class members to redress the wrongs done to them individually.

70. Plaintiff and The Harman Firm, LLP will fairly and adequately assert and protect the interests of the Class.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Unpaid Overtime in Violation of the FLSA**

71. Plaintiff, on behalf of himself and others, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 70 with the same force as though separately alleged herein.

72. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the FLSA.

73. The FLSA mandates that employers must compensate employees at one-and-a-half (1.5) times their normal hourly rate for all hours worked over forty (40) hours each week.

74. Defendant violated the FLSA's overtime requirement by not paying Plaintiff at the overtime premium rates for hours worked in excess of forty (40) in a work week.

75. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant his unpaid compensation, liquidated damages, interest, reasonable attorneys' fees, and costs related to the action.

**SECOND CAUSE OF ACTION**
**Unpaid Overtime in Violation of the NYLL**

76. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 75 with the same force as though separately alleged herein.

77. At all relevant times, Plaintiff was employed by Defendant within the meaning of the NYLL.

78. The NYLL mandates that employers must compensate employees at one-and-a-half (1.5) times their normal hourly rate for all hours worked over forty (40) hours each week.

79. Defendant violated the NYLL's overtime requirement by not paying Plaintiff at the overtime premium rates for hours worked in excess of forty (40) in a work week.

80. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant his unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

**THIRD CAUSE OF ACTION**
**Unpaid Spread of Hours Pay in Violation of the NYLL**

81. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 80 with the same force as though separately alleged herein.

82. At all relevant times, Plaintiff was employed by Defendant within the meaning of the NYLL.

83. The NYLL requires an employer to pay an employee one (1) additional hour at the minimum wage for any day during which the employee worked ten (10) or more hours.

84. Plaintiff regularly worked ten (10) or more hours during his employment with Defendant.

85. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant his unpaid compensation, liquidated damages, interest and reasonable attorneys' fees and costs related to the action.

<b>FOURTH CAUSE OF ACTION<br>Failure to Pay Wages in Violation of the NYLL</b>

86. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 85 with the same force as though separately alleged herein.

87. At all relevant times, Plaintiff was employed by Defendant within the meaning of the NYLL.

88. NYLL §191(1)(d) states that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned" and in no event "less frequently than semi-monthly."

89. Defendant did not pay Plaintiff for his time spent engaged to wait throughout his employment with Defendant.

90. As Defendant still has not paid Plaintiff for his time spent engaged to wait, Defendant has violated NYLL §191(1)(d).

91. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant his unpaid compensation, liquidated damages, interest and reasonable attorneys' fees and costs related to the action.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Notice and Keep Records in Violation of the NYLL**

92. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 91 with the same force as though separately alleged herein.

93. At all relevant times, Plaintiff was employed by Defendant within the meaning of the NYLL.

94. NYLL § 195 mandates that employers keep certain records and provide certain notices to their employees.

95. Defendant violated the NYLL's notice and record-keeping requirements by not providing Plaintiff with the notices to which he is entitled under the NYLL and by failing to keep accurate records of hours worked by its employees.

96. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant fifty dollars ($50) for each work ay that the violations occurred or continue to occur, reasonable attorneys' fees, and costs related to the action.

**SIXTH CAUSE OF ACTION**
**Gender Discrimination in Violation of the NYCHRL**

97. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 96 with the same force as though separately alleged herein.

98. The NYCHRL prohibits an employer from discriminating against an employee on the basis of gender.

99. Defendant discriminated against Plaintiff because he is male; Defendant terminated Mr. Campbell's employment on the basis of female employees' unfounded accusations and refused to fairly consider his statements solely because he is male.

100. As a direct and proximate consequence of Defendant's gender discrimination, Plaintiff has suffered, and continue to suffer, substantial damages, including, but not limited to, lost pay and emotional distress.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, damages to be determined at trial;

G. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 10, 2016

By: /s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiffs*