**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
DERRICK CAMPBELL, *for himself and on behalf of all others similarly situated,*

                *Plaintiff,*

    *v.*

EMPIRE MERCHANTS, LLC,

                *Defendant.*
-----------------------------------------------------------------X

**16 CV 5643**

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
# MOTION FOR PRELIMINARY COLLECTIVE ACTION CERTIFICATION

---

Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, New York 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiffs*

**PRELIMINARY STATEMENT**

Plaintiff Derrick Campbell ("Plaintiff" or "Mr. Campbell"), by his counsel, The Harman Firm, LLP, hereby moves the Court for an order (i) conditionally certifying this case as a collective action under 29 U.S.C. § 216(b); (ii) approving the form of notice (Exhibit A) and the opt-in consent form (Exhibit B) to the class; and (iii) directing Defendant to provide the names, last known mailing addresses, alternate addresses, telephone numbers, email addresses, Social Security numbers, and dates of employment of all putative class members.

On October 10, 2016, Mr. Campbell filed this lawsuit against Empire Merchants, LLC ("Defendant" or "Empire"), seeking, among things, unpaid overtime wages under the Fair Labor Standards Act ("FLSA") for time engaged to wait. Essentially, Empire hedges against the inherent scheduling risk that it will need additional employees besides those who have been scheduled to show up for work on a given day by having its "shape-up" employees present on its site at the start of each day without compensation. This policy (the "Reporting Policy") shifts the financial burden of the fluctuating need for employees from Empire to the shape-up employees, who suffer the economic and social costs of arranging coverage for domestic responsibilities in anticipation of work and the opportunity cost of forgoing other employment. Plaintiff brings the FLSA claim on behalf of all "shape-up" employees employed by Defendant within the last three years who worked in and/or out of a location in New York State ("Covered Employees").

**STATEMENT OF FACTS**

The Reporting Policy results in Covered Employees working in excess of 40 hours per workweek without receiving overtime compensation at the overtime premium rate.

Mr. Campbell was a Covered Employee from approximately March 30, 2016, to June 22,

1

2016. Campbell Decl. ¶ 3. Mr. Campbell and other Covered Employees were responsible for various cleaning and landscaping tasks in and around Empire's warehouse location (the "Warehouse")—such as mowing grass, trimming bushes, and sweeping—and working with Empire's delivery drivers to unload deliveries to Empire's customers from Empire's delivery trucks. Campbell Decl. ¶ 5. Empire instructed the Covered Employees to report to work at the Warehouse between 5:30 a.m. and 6:00 a.m. on each day a Covered Employee worked. Compl. ¶ 32. Upon reporting to work, Empire directed the Covered Employees to check in and wait to be assigned work. Compl. ¶ 33. Empire had three morning shifts for shape-up employees, beginning at 7:00 a.m., 8:00 a.m., and 9:00 a.m. Compl. ¶ 34. After checking in, the Covered Employees could not leave the Warehouse or use waiting time for their own purposes. Compl. ¶ 35. At all times after checking in, Covered Employees were ready, willing, and able to work. Compl. ¶ 37. If Covered Employees were not assigned work by the beginning of the third shift at 9:00 a.m., Empire instructed them to go home without pay. Compl. ¶ 38. As a result, Covered Employees generally spent 1 to 3.5 hours per day, or 4 to 17.5 hours per week, engaged to wait without compensation. Compl. ¶ 39–41. Since October 13, 2013, Mr. Campbell believes Empire has employed around 50 Covered Employees within the statute of limitations. Campbell Decl. ¶ 17.

The Reporting Policy was to Empire's primary benefit, as having the Covered Employees available on-site allowed Empire to have an immediately accessible workforce. Compl. ¶ 36.

## ARGUMENT

The Court should immediately grant conditional certification because all Covered Employees are similarly situated. Further, any delay in sending notice would prejudice opt-in plaintiffs: delay devalues, or even eliminates, putative opt-in plaintiffs' claims and reduces the

2

probability that putative opt-in plaintiffs receive the notice. As low-wage workers, the putative opt-in plaintiffs are more vulnerable to involuntary residential mobility. Additionally, the proposed notice and opt-in consent form are fair and adequate, and discovery of names, addresses, telephone numbers, email addresses, social security numbers, and dates of employment is proper and necessary.

Therefore, the Court should immediately grant conditional certification.

**POINT I**
**THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION BECAUSE PLAINTIFF IS SIMILARLY SITUATED TO ALL COVERED EMPLOYEES, AND DELAY WILL REDUCE THE VALUE OF PUTATIVE PLAINTIFFS' CLAIMS AND THE NUMBER OF OPT-IN PLAINTIFFS.**

The FLSA contemplates the maintenance of collective actions by similarly situated employees for an employer's violation of the provisions requiring payment of the minimum wage. 29 U.S.C. § 216(b). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v. E. Photographic Labs*, 600 F.2d 335, 336 (2d Cir. 1975). The alternative—a multitude of virtually identical individual suits—would burden courts unnecessarily and risk inconsistent judgments between cases arising from the same events and brought under the same laws.

**A.**   ***"Shape-up" employees all spent time engaged to wait without compensation.***

Courts generally employ a two-step inquiry in managing FLSA collective action suits: an initial "notice stage" and a subsequent "decertification stage." *Masson v. Ecolab*, 04 Civ. 4488 (MBM), 2005 WL 2000133, at *13 (S.D.N.Y. 2005); *see also Mooney v. Aramco Servs. Co.*, 54

F.3d 1207, 1213-14 (5th Cir. 1995). The procedural posture of the instant action is the first "notice stage," during which the court determines, on the basis of pleadings and any affidavits, whether to conditionally certify a collective action and issue notice to potential opt-in plaintiffs. *Mooney*, 54 F.3d at 1213-14. Here, the Court must determine whether there are other employees who are "similarly situated," simply considering whether there are others who may also be victims of the same challenged conduct. *Gjurovich v. Emmanuel's Marketplace*, 282 F. Supp. 2d 91, 104 (S.D.N.Y. 2003); *Mooney*, 54 F.3d at 1214.

The burden for demonstrating that potential plaintiffs are similarly situated is very low at the notice stage. A plaintiff need make only a "modest factual showing" that she and potential collective action members were victims of "a common policy or plan that violated the law." *Hoffmann*, 982 F.Supp. at 261; *see also Masson*, 2005 WL 2000133 at 13 ("[C]ourts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate."); *Harrington v. Educ. Mgmt. Corp.*, 02 Civ. 0787 (HB), 2002 WL 1343753, at *2 (S.D.N.Y. June 19, 2002) (authorizing notice to employees who held the same title "*or those with 'similar titles'*" on the grounds that it may enable more efficient resolution of the underlying issues) (emphasis in original). Plaintiff's initial burden is "minimal" in part because the Court's decision to direct notice at this stage is a "preliminary" one that may be modified or reversed in the decertification stage. *Gjuorvich*, 282 F.Supp.2d, at 105; *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998).

The only question at this juncture is whether there are others similarly situated to Plaintiff who deserve notice of the action. *Hoffmann*, 982 F. Supp. at 262; *Krueger v. N.Y. Telephone Co.*, Nos. 93 CIV. 0178 (LMM), 93 CIV. 0179 (LMM), 1993 WL 276058, at *1 (S.D.N.Y. July 21, 1993) ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn

out *not* to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case.") (emphasis in original). The court does not need to evaluate the merits of a plaintiff's claims in order to determine that a definable group of "similarly situated" plaintiffs might exist. *Hoffmann*, 982 F. Supp., at 262; *see, e.g.*, *Mentor v. Imperial Parking Systems, Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007) (stating that "the merits of a plaintiff's claims need not be evaluated and discovery need not be completed to approve and disseminate a § 216(b) notice"). As such, any merits-based argument "is an improper ground on which to base a denial of a motion to certify conditionally an FLSA collective action[.]" *Anglada v. Linens 'n' Things, Inc.*, 06 Civ. 12901 (CM)(LMS), 2007 U.S. Dial. LEXIS 39105, at *20 (S.D.N.Y. April 26, 2007). Rather, the proper inquiry is merely "whether the putative class alleged by Plaintiffs is similarly situated based on the pleadings and any affidavits." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007).

Here, Plaintiff has made far more than a modest factual showing that he and the Covered Employees are similarly situated. Plaintiff's detailed allegations in the Complaint and his declaration show that all Covered Employees were subject to the same Reporting Policy: Empire instructed the "shape-up" workers to arrive at the Warehouse between 5:30 a.m. and 6:00 a.m., directed them to check in and wait to be assigned work, and prevented them from leaving and using the time for personal purposes. Compl. ¶ 32–35. As a result of the Reporting Policy, the Covered Employees worked hours for which they did not receive appropriate compensation, and Empire failed to pay them overtime compensation at the overtime premium rate, in violation of the FLSA. As such, Plaintiff is similarly situated to the rest of the putative collective action members.

**B.** *Sending expedited notice to "similarly situated" employees fulfills the FLSA's broad remedial purpose.*

Expedited notice is critical in FLSA collective actions. Unlike absent class members in a Rule 23 class action, potential class members in an FLSA collective action must affirmatively consent, or "opt in," to be covered by the suit. 29 U.S.C. § 216(b). The statute of limitations continues to run on each individual's claim until he or she files a written consent form with the Court. 29 U.S.C. §§ 255, 256(b). To ensure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has held that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt-in plaintiffs. *Hoffmann-LaRoche*, 493 U.S., at 170. Notice to putative class members should be sent as soon as possible since, due to the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." *Foster v. Food Emporium*, 99 Civ, 3860, 2000 U.S. Dist. LEXIS 6053, at *5 (S.D.N.Y. Apr. 26, 2000); *see also Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1995) ("Certainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.") (internal quotation marks and citations omitted). Thus, early distribution of a notice of pendency is crucial in an FLSA collective action.

Further, any delay sending the notice will reduce the probability that putative opt-in members still live at the addresses that Empire has in its records, as low-wage workers move more than others. Numerous studies have found that low-income workers, such as Plaintiff and other Covered Employees, experience residential mobility more frequently than higher-wage workers. Asone, Nan Marie and Sara McLanahan, "Family Structure, Residential Mobility and School Dropout: A Research Note," *Demography*, 31:575-84 (1994); Gaster, Joseph, Stafanie DeLuca and Angela Estacion, "Coming and Going: The Effects of Residential and School

Mobility on Delinquency," *Social Science Research* 39: 459-76 (2010); Pribesh, Shana and Douglas B. Downey, "Why Are Residential Moves Associated with Poor School Performance?", *Demography* 36(4): 521-34 (1999). Due to a lack of financial resources, low-wage workers are more likely than higher-wage workers to make reactive moves—meaning moves resulting from events outside of a tenant's control, *e.g.,* maintenance problems, eviction, and unit failure—which is the leading cause for high residential mobility among low-wage workers. "Reflections on Recent Fieldwork in Mobile, Alabama, and Baltimore," PD & R Edge, https://www.huduser.gov/portal/pdredge/pdr_edge_featd_article_092112.html. Accordingly, the Court should immediately grant conditional certification.

## POINT II
## THE PROPOSED NOTICE AND OPT-IN CONSENT FORM ARE FAIR AND ADEQUATE.

Attached to the Declaration of Walker G. Harman, Jr. ("Harman Decl."), as Exhibit A and Exhibit B, respectively, are Plaintiff's proposed Notice pursuant to § 216(b) and proposed consent form allowing individuals to opt in to the action. District courts have "broad discretion" with respect to the content of § 216(b) notices and opt-in consent forms. *Lee v. ABC Carpet & Homes*, 00 Civ. 0984, 2008 U.S. Dist. LEXIS 38725, at *3-4 (S.D.N.Y. May 9, 2008). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli*, 516 F. Supp. 2d, at 323. The proposed Notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action, provides clear instructions on how to opt in, and accurately states the prohibition against retaliation or discrimination for

participation in an FLSA collective action. As such, the Court should issue the proposed Notice and consent form.

## POINT III
### DISCOVERY OF NAMES, ADDRESSES, TELEPHONE NUMBERS, EMAIL ADDRESSES, SOCIAL SECURITY NUMBERS, AND DATES OF EMPLOYMENT IS PROPER AND NECESSARY UNDER § 216(B).

Plaintiff requests that, in addition to entering an order granting conditional certification and approving Plaintiff's proposed Notice, the Court order Defendant to produce, within ten days of the Court's Order, a computer-readable list of all Covered Employees who were employed by Defendant at any point in the three years prior to the entry of the Order, including the following information for each listed individual: name; last known mailing address; alternate address, if any; all known email addresses; all known telephone numbers; Social Security number; and dates of employment with Defendant. It is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective action members. *Velasquez v. Dig. Page, Inc.*, 11 CV 3892, 2014 U.S. Dist. LEXIS 68538, at *43-44 (E.D.N.Y. May 19, 2014).

Plaintiff seeks the Social Security numbers of Covered Employees so that Plaintiff's counsel can perform a skip trace[1] for all notices returned as undeliverable because of a change of address. For the reasons stated in Point 1, a large percentage of consent forms are typically returned as undeliverable in FLSA wage-and-hour cases involving low-wage workers. Skip tracing, although not perfect by any means,[2] serves as one way to locate those employees whose

---

[1] Skip tracing is the process of locating a person for any number of purposes. The term "skip" (as a noun) refers to the person being searched for and is derived from the idiomatic expression "to skip town," meaning to depart, leaving minimal clues behind. Skip tracing refers to "tracing" the "skip" to a new location.

[2] One shortcoming of skip tracing is that it cannot locate putative opt-in plaintiffs who worked with illegally obtained, forged, or invaild social security numbers. These individuals are still entitled to monies resulting from their employer's wage-and-hour violations. Any person who is employed by an employer may pursue an action

consent forms are undeliverable. Plaintiff is willing to execute a stipulation of confidentiality regarding the Social Security numbers in question. *See Patton v. Thomson Corp.,* 264 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) (requiring the defendant to produce Social Security numbers of putative collective action members subject to entry of a confidentiality agreement).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court conditionally certify his FLSA claim as a collective action, approve notice, and order Defendant to produce the names, last known mailing addresses, alternate addresses, email addresses, telephone numbers, Social Security numbers, and dates of employment of all putative opt-in plaintiffs.

Dated: New York, New York
       February 6, 2017

By: _[signature]_
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, New York 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiffs*

---

under the FLSA for work actually performed, regardless of immigration status. *Solis v. Cindy's Total Care, Inc.*, 10 Civ. 7242, 2011 WL 51700092011, at *1 (S.D.N.Y. Oct. 31, 2011)