UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DERRICK CAMPBELL, *on behalf of himself and all*    :
*others similarly situated*,    :
    :
                       Plaintiff,    :      <u>REPORT &</u>
    :      <u>RECOMMENDATION</u>
   -against-    :      16-CV-5643 (ENV) (SMG)
    :
EMPIRE MERCHANTS, LLC,    :
    :
                   Defendant.    :
------------------------------------------------------------------x
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Derrick Campbell asserts claims in this action for unpaid overtime and other

wage and hour law violations under the Fair Labor Standards Act ("FLSA") and New York

Labor Law ("NYLL"), as well as for gender-based employment discrimination in violation of the

New York City Human Rights Law ("NYCHRL").  With respect to his wage and hour claims,

plaintiff contends that, to be hired to work, he was required to arrive and "shape up" at the

premises of defendant Empire Merchants, LLC, substantially before the time when defendant

considered his compensable time to have begun.  The interval between arriving at the site and

clocking in was, plaintiff argues, compensable time spent engaged in waiting for a specific work

assignment.  Defendant Empire disagrees, contending instead that plaintiff's work day began

when he was given a work assignment, and that it does not owe plaintiff wages for the time he

voluntarily spent waiting to be hired for a specific assignment or shift.

Defendant Empire now moves for summary judgment on plaintiff's FLSA and NYLL

claims for unpaid overtime, on plaintiff's claim for unpaid wages pursuant to NYLL § 191(1)(d),

and on plaintiff's claims for wage notice and recordkeeping violations pursuant to NYLL § 195.

Memorandum in Support of Notice of Motion for Partial Summary Judgment ("Def. Mem.") at 1, Docket Entry 47.[1]  United States District Judge Eric N. Vitaliano has referred defendant's motion to me for Report and Recommendation.  For the reasons stated below, I respectfully recommend that defendant's motion be granted in part and terminated as moot in part.

## FACTUAL BACKGROUND

Defendant Empire is a distributor of wine and spirits in the New York metropolitan area. Defendant's Reply and Objections to Plaintiff's Counter Statement of Undisputed Material Facts ("Def. R. 56.1 Reply") ¶ 1, Docket Entry 55.[2]  Empire receives products during the day and loads its trucks at night to make deliveries the next day to its customers.  *Id.* ¶ 4.  Defendant employs a regular workforce that includes warehouse workers represented by Wine, Liquor & Distillery Workers Union Local 1-D, UFCW, AFL-CIO ("UFCW Local 1-D"), and distribution drivers and helpers represented by Teamsters Local Union No. 917, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Teamsters Local 917").  *Id.* ¶ 5.

Of particular relevance here, defendant, to meet daily variations in the amount of labor it requires, supplements its regular workforce on an as-needed basis by assigning work through a "shape-up procedure."  *Id.* ¶ 8-9.  Some of defendant's shape-up work is assigned to union members pursuant to terms established in each union's collective bargaining agreement.  *Id.* ¶¶ 26, 28-29, 31.  Individuals such as plaintiff, who have no bargaining unit status with either union, may also seek work through Empire's shape-up procedure.  *Id.* ¶¶ 32, 78-79, 82.  To

---

[1] Plaintiff also brought, and defendant has moved for summary judgment on, a spread-of-hours claim pursuant to 12 N.Y.C.R.R. § 142-2.4.  *See* Def. Mem. at 23.  In his opposition to defendant's motion however, plaintiff withdraws that claim.  *See* Plaintiff's Memorandum of Law in Opposition ("Pl. Mem.") at 3 n.1, Docket Entry 52. Accordingly, I respectfully recommend that plaintiff's spread-of-hours claim be dismissed.
[2] Unless otherwise noted, the facts presented in the text are undisputed.

participate in Empire's shape-up procedure, though, these non-union unaffiliated employees must first be screened and determined by Empire to be qualified, and then appear and sign in at Empire's premises on a given day to indicate their desire to work. *Id.* ¶ 8.

Defendant accepts employment applications from unaffiliated employees during a weekly "open house." *Id.* ¶ 11. Empire reviews the submitted applications to determine whether employees preliminarily qualify as eligible to be hired for a specific work assignment through the shape-up procedure. *Id.* ¶ 13. Defendant then calls those applicants determined to be eligible to inform them that they have qualified and to advise them about the shape-up procedure and when and where to appear to obtain work. *Id.* ¶ 14. After ten days of employment, applicants must further qualify by passing a background check and drug test. *Id.* ¶ 16.

Once preliminarily qualified, an unaffiliated individual must appear at Empire's premises on any day he or she hopes to work and sign his or her name on a sign-in sheet. *Id.* ¶ 32. Unaffiliated employees like plaintiff are not guaranteed to receive a work assignment on any particular day, and union members who participate in the shape-up procedure—who also are not guaranteed work—have priority over them. *Id.* ¶¶ 31-32.

The selection of individuals for work assignments through the shape-up procedure begins at about 7:30 in the morning. *Id.* ¶ 38. Defendant's Day Operations Manager and Dispatch Manager review the sign-in sheets and, after applying the appropriate priority rules concerning union employees, may select non-union employees like plaintiff for work assignments. *Id.* ¶¶ 67-68, 70. If non-union employees are selected, the manager provides a list of their names to a dispatcher who calls out the names over a loudspeaker. *Id.* ¶ 71. The individuals are then assigned work either in and around defendant's warehouse or on one of its delivery trucks. *Id.* ¶ 75.

Plaintiff obtained work assignments through the shape-up procedure and was paid straight time for a total of twenty-eight days between April 1, 2016 and June 22, 2016. *Id.* ¶¶ 2-3, 88.  He was not paid, however, for time spent waiting to find out if he would receive an assignment; rather, plaintiff and other shape-up workers were paid only for time spent after being assigned work. *Id.* ¶ 85.  Once having received an assignment, plaintiff punched a time card to mark the beginning and end of his work day and, when assigned to the warehouse, to record his lunch break. *Id.*

**DISPUTED FACTS**

Empire's use of shape-up workers and the general procedures it follows when assigning work to them, along with plaintiff's participation in those procedures, are not in dispute.  Rather, the parties' factual disputes center on two issues: first, whether and to what extent arrival time is factored into selection for shape-up work, and second, whether and to what extent defendant controlled plaintiff's activities and freedom of movement from the time he arrived at defendant's facility until he received a work assignment.

A. *Timing of Plaintiff's Arrival and Sign-In*

Several undisputed factors go into selecting which non-union employees receive work assignments on a particular day.  These factors include the number of assignments available, the number of unaffiliated employees seeking work, the reputation of a particular worker, and whether a worker has knowledge likely to help a driver on a particular route. *Id.* ¶¶ 53, 66.  In addition, as noted above, union employees receive priority when defendant assigns shape-up work. *Id.* ¶¶ 63-65, 68.

Plaintiff contends that the time he signed in on a given day was also a factor in determining whether he would be given work. *See* Declaration of Derrick Campbell ("Campbell Decl.") ¶ 34, Docket Entry 50.  More specifically, Campbell alleges that Empire managers

4

selected workers for assignments by calling names higher on the sign-in list first and going down the list until all available work was assigned.  *Id.*  Plaintiff further contends that another employee told him that the earlier he arrived, the better his chance of getting work, and that other employees believed the same.  *Id.* ¶¶ 35-36.

Plaintiff contends that defendant instructed him and other shape-up workers to report to its facility in Brooklyn by 7:00 a.m. for his first day of work.  *Id.* ¶ 12.  As circumstantial corroboration, plaintiff points to an email circulated to other Empire managers by defendant's Security Manager, who is also responsible for determining whether applicants are qualified for shape-up work.  The Security Manager's email provided these other managers with a list of individuals who would be reporting to the warehouse the next day at 7:00 a.m. to seek work. Affidavit of Lucy Romano ("Romano Aff.") ¶¶ 8-9, Ex. 2, Docket Entry 44-2.

Under the Teamsters Local 917 Collective Bargaining Agreement ("CBA"), steady drivers and helpers have regular reporting times.  Def. R. 56.1 Reply ¶ 25.  Likewise, regular warehouse associates have a scheduled starting time for a full five-day workweek under the UFCW Local 1-D CBA.  *Id.* ¶ 27.  Defendant contends, though, that it does not require non-union employees to report at a certain time and that it does not monitor their arrival times.  Def. Mem. at 7.  In support, defendant has submitted the affidavits of its Dispatch Manager, Ronnie Rojas ("Rojas Aff."), Docket Entry 43, and of its Day Operations Manager, James Ching, ("Ching Aff."), Docket Entry 46.  Rojas is primarily responsible for assigning employees to work as drivers or helpers on delivery trucks.  Rojas Aff. ¶ 3.  Rojas states that,

> [w]hile the selection of individuals for work assignments through the shape-up procedure begins each morning at approximately 7:30 AM by the terms of the Teamsters Local 917 CBA[], the time of signing in is not noted on sign-in sheets and the order of signing in is not a factor in my selection, nor do I monitor the time any individual seeking work through the shape-up procedure arrives or signs in to indicate his or her availability for work.

*Id.* ¶ 16.  Ching is also directly involved in Empire's shape-up procedure.  Ching Aff. ¶ 8.

According to Ching,

> [T]he daytime shift in the warehouse begins 8:00 AM.  I generally begin reviewing the lists signed by shape-up workers seeking available warehouse assignments through the shape-up at approximately 7:50-7:55 AM for consideration of assignments for the 8:00 AM shift. . . .
>
> [I]ndividuals who wish to shape up are not required to report on any particular day or at a certain time.  I do not monitor the times individuals seeking work through the shape-up procedure arrive or sign in to indicate their availability for work, nor do I consider the order of names on the sign-in lists in my decisions to select individuals for warehouse work assignments.

*Id.* ¶¶ 14, 16.  Defendant also asserts that sign-in times are not indicated on sign-in sheets and points to plaintiff's deposition testimony acknowledging that he did not enter the time he arrived when he signed in.  Campbell Dep., Docket Entry 42-1, at 65.  Plaintiff also noted in his deposition, though, that there were on some occasions names ahead of his, as well as below his, on the list, and that this was plain to see by looking at the list itself.  *Id.*   Finally, defendant points out that, once a manager takes a sign-in list of shape-up workers, a new blank page is provided for additional shape-up workers to sign, suggesting that even individuals who do not arrive in time to sign the first sheet may on some occasions be assigned work.  Rojas Dep., Docket Entry 42-2, at 56-57; Geneva Dep., Docket Entry 42-4, at 123-24; Romano Dep., Docket Entry 42-5, at 103, 105.

### B.  *Restrictions While Awaiting Assignment*

On a day he sought work, plaintiff would arrive at Empire's warehouse in the morning to sign in.  Plaintiff then spent, he contends, "approximately 1.5 to 2 unpaid hours waiting each day that [he] worked at Empire" before being allowed to clock in for a work assignment.  Campbell Decl. ¶ 62.  Compensation for these unpaid hours is at the crux of this lawsuit.

6

It is undisputed that individuals waiting to see whether they would receive a work assignment routinely spent their time engaged in personal activities.  More specifically, the parties agree that individuals waiting for shape-up work assignments spent their time "placing or receiving calls and sending or receiving text messages on their mobile phones; reading a newspaper, magazine, or book; checking social media; drinking; eating; playing dominoes or card games; smoking and ball-playing outdoors—all in addition to general socializing and congregating."  Def. R. 56.1 Reply ¶ 45.

Plaintiff contends, though, that employees were forced as a practical matter to wait in a confined area and that their activities while waiting there were constrained.  Campbell Decl. ¶ 55.  Plaintiff notes that the names of those selected for work assignments were announced over loudspeakers in the "Shape-Up Room," inside defendant's warehouse, and that the names could not be heard from the warehouse entrance or beyond.  *Id.* ¶¶ 40-44.  According to plaintiff, an assigned worker's names would be called only once; if the worker failed to respond within two or three minutes, he or she would not receive a work assignment for that day.  *Id.* ¶¶ 45-48.

Plaintiff's contentions in this regard were essentially confirmed by Empire dispatch manager Rojas, who testified at his deposition that he tells individuals waiting for work assignments, "If you want to work, you need to be inside the room when you're called and you need to listen up, you need to remove your headphones."  Rojas Dep. at 103.  Similarly, defendant acknowledges in its briefing on the current motion that a worker who "moves to an outside area beyond the hearing range of the loudspeakers may miss his or her name being called and lose the assignment to which he or she did not respond; however, he or she may receive another assignment that day when he or she returns and reports his or her presence and availability."  Def. Mem. at 12-13.

Under these circumstances, plaintiff contends, he was unable as a practical matter to leave the Shape-Up Room while waiting for an assignment, because doing so would risk not hearing his name called. Campbell Decl. ¶ 52. Moreover, while plaintiff acknowledges that he could eat and check texts and Facebook messages, that was "basically all that [he] could—or did—do while waiting." *Id.* ¶¶ 56-57. Plaintiff further states that defendant's rules for employees awaiting shape-up work included a prohibition on cell phone use in the office or warehouse. *Id.* ¶ 38.

DISCUSSION

## I.    Standard of Review

Summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion brought under Rule 56, "[t]he court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Perlman v. Fid. Brokerage Servs. LLC*, 932 F. Supp. 2d 397, 406 (E.D.N.Y. 2013) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004)); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The initial burden of establishing that there are no genuine issues of material fact falls on the moving party; if the movant meets that burden, the non-moving party must produce evidence of specific facts that raise a genuine issue for trial to avoid summary judgment. *Anderson*, 477

8

U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 35-36 (2d Cir. 1996).  This evidence may not

consist of "mere conclusory allegations, speculation, or conjecture," *Gov't Emps. Ins. Co. v.*

*Excel Imaging, P.C.*, 869 F. Supp. 2d 367, 371 (E.D.N.Y. 2012) (quoting *Cifarelli v. Vill. of*

*Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)), and "[t]here must be more than a 'scintilla of evidence'"

to defeat a summary judgment motion.  *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d

174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

## II.     FLSA Claims

### A.  Legal Standards

Generally, to establish liability for unpaid wages under the FLSA, a plaintiff "must prove

that he performed work for which he was not properly compensated, and that the employer had

actual or constructive knowledge of that work."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352,

361 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)).

Although the FLSA does not explicitly define what constitutes work,

> [t]he broad meaning that has emerged from Supreme Court cases describes work as
> exertion or loss of an employee's time that is (1) controlled or required by an employer,
> (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed
> outside the scheduled work time, an integral and indispensable part of the employee's
> principal activities.

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008) (citing *Holzapfel v. Town of*

*Newburgh*, 145 F.3d 516, 522 (2d Cir. 1998)).

Even if the activities would otherwise meet the definition of work, the Portal-to-Portal

Act provides that an employee is not entitled to compensation for "walking, riding, or traveling

to and from the actual place of performance of the principal activity," or for  "activities which

are preliminary or postliminary to said principal activity" and "which occur either prior to the

time on any particular workday at which such employee commences, or subsequent to the time

on any particular workday at which he ceases, such principal activity or activities."  29 U.S.C.

§ 254(a); *see also Gibbs v. City of New York*, 87 F. Supp. 3d 482, 491 (S.D.N.Y. 2015) (noting that even if an activity meets the above definition of work, "it may be excluded by either of the twin exceptions contained in . . . the Portal–to–Portal Act.").  On the other hand, an activity requires compensation as among an employee's principal activities if, for instance, it is "one with which the employee cannot dispense if he is to perform his principal activities."  *Gibbs*, 87 F. Supp. 3d at 498 (internal citation omitted).

### B.  Whether Plaintiff's Time Was "Work" for which FLSA Requires Compensation

Plaintiff's FLSA claim turns on whether time spent "shaping up" is part of or merely preliminary to the principal activities shape-up workers are hired to perform.  The Supreme Court most recently considered whether certain activities constituted covered compensable work or excluded preliminary or postliminary activities in *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516 (2014).  The employees in that case were warehouse workers who retrieved inventory and packaged it for shipment.  The employer required the workers to undergo security screenings at the end of their shifts as a theft prevention measure.  The employees argued that they were entitled to compensation for time spent waiting for and undergoing these security screenings.  *Id.* at 515-16.

The Supreme Court unanimously rejected the workers' argument.  In doing so, the Court stressed that the screenings were not the "'principal activity or activities which [the] employee is employed to perform'. . . Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment."  *Id*. at 518 (quoting 29 U.S.C. § 254(a)(1)).  The same reasoning applies here.  Empire did not employ workers to shape up, but to perform the assignments they received on its trucks or in its warehouse through the shape-up process.

The Supreme Court's analysis in *Integrity Staffing* acknowledged that the term "principal

activity or activities" as used in the Portal-to-Portal Act includes all activities that "are an

'integral and indispensable part of the principal activities.'" *Id.* at 517 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005)).  To be "integral and indispensable," an activity must be

"necessary to the completeness or integrity of the whole" and constitute "an intrinsic portion or

element, as distinguished from an adjunct or appendage, of that whole."  *Id.* (quoting 5 Oxford

English Dictionary 366 (1933)).  Applying this definition, the Court surveyed some of its

precedents.  The Court pointed out that, in *Steiner v. Mitchell*, 350 U.S. 247 (1956), time spent

by battery plant workers showering and changing clothes after exposure to toxic chemicals was

held to be compensable because it was indispensable to the performance of productive work, and

that, in *Mitchell v. King Packing Co.*, 350 U.S. 260 (1956), time spent by meatpackers

sharpening knives was likewise held to be compensable because dull knives would slow

production, result in waste, and cause accidents.  *Id*.  In contrast, the Court held in *IBP* that time

spent waiting to put on protective clothing was too far removed from productive work to be

considered indispensable and integral to a principal activity.  546 U.S. at 42.

Plaintiff argues that he is entitled to wages for time spent shaping up because defendant

Empire required him to be present and wait for an assignment at its job site.  Pl. Mem. at 12-13.

Plaintiff stresses that he was, as a practical matter, required to wait in the shape-up room or other

locations within earshot of the defendant's loudspeakers so that, if chosen for a work assignment,

he could hear his name announced and respond.  Campbell Decl. ¶ 52.  Plaintiff also invokes a

federal regulation that provides that waiting time is "regarded as a preliminary [non-work]

activity when the employee *voluntarily arrives . . . earlier than he is either required or expected*

*to arrive*."  29 C.F.R. § 790.7(h) (emphasis added).  Plaintiff points out that he did not

voluntarily arrive earlier than expected, but rather was required by Empire to arrive when he did.

11

The Supreme Court in *IBP*, in the course of holding that time spent waiting to don protective gear was not integral to principal activities of work, rejected the argument that 29 C.F.R. § 790.7(h) suggests that all time an employer requires a worker to spend waiting must be compensated. The Court concluded that "[m]ore pertinent . . . is the portion of § 790.7 that characterizes the time that employees must spend waiting to check in or waiting to receive their paychecks as generally a 'preliminary' activity covered by the Portal-to-Portal Act." *IBP*, 546 U.S. at 41 (citing 29 C.F.R. § 790.7(g)).

That plaintiff was required to be present in a particular place at a particular time to receive a work assignment is insufficient to qualify the time he spent there as integral and indispensable to his principal work activities. The workers in *Integrity Staffing* were likewise required to wait for and undergo security screenings to maintain their jobs, but the Court held that fact did not support the conclusion that the time they spent doing so was integral to their work. Rather, the Court stressed that it is error to "focus[] on whether an employer *required* a particular activity." 135 S. Ct. at 519. "If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities' the very activities that the Portal-to-Portal Act was designed to address." *Id.*

Plaintiff Campbell also argues that time spent shaping up should be compensable because it primarily benefitted defendant Empire. Pl. Mem. at 15-16. The parties agree that Empire chose to conduct a shape-up procedure "to adjust its day-to-day operations in response to . . . fluctuations in business volume." Def. R. 56.1 Reply ¶ 8. In other words, without shape-up workers, Empire would have needed to hire additional permanent employees—who would presumably be more expensive to retain than day-to-day shape-up workers—to meet the demands of its customers. Again, however, the holding in *Integrity Staffing* undermines

12

plaintiff's argument.  Clearly, the security screenings at issue in that case were conducted entirely for the benefit of the employer.  The Supreme Court, though, found that to be an insufficient basis for requiring compensation, and explicitly stated that "[a] test that turns on whether the activity is for the benefit of the employer is . . . overbroad."  135 S. Ct. at 519.  *See also Gibbs*, 87 F. Supp. 3d at 498 ("*Integrity Staffing* [teaches that] whether a particular activity is 'required' or 'for the benefit' of an employer is not the appropriate question under the Portal-to-Portal Act.").

The showering in *Steiner* and blade-sharpening in *Mitchell* were critical to the safe, efficient performance of the principal activities the employees in those cases were hired to perform.  The security screening in *Integrity Staffing* was not.  The time spent shaping up in the case at bar is similar to the security screening time at issue in *Integrity Staffing;* plaintiff and his fellow shape-up workers were no better equipped to perform their principal activities because they shaped up to get their assignments.   Time spent shaping up is also analogous to checking in and checking out and waiting in line to do so, and waiting in line to receive pay checks, all of which are defined in 29 C.F.R. § 790.7(g) as preliminary or postliminary activities which may be performed outside the work day and without compensation.  *See also Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 226 (5th Cir. 2017) (holding that pre-shift waiting time was not integral and indispensable to employees' principal activities, and hence not compensable, even where employees were required to take company buses to the work site and buses arrived before the shift began).

For all these reasons, I respectfully recommend that defendant's motion for summary judgment on plaintiff's FLSA claim be granted.

### III.   Failure to Pay Wages Pursuant to NYLL § 191

Plaintiff also brings a claim pursuant to NYLL § 191(1)(d), which provides that a "worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."  Plaintiff alleges that defendant violated NYLL § 191 by not paying him for his hours spent waiting during the shape-up process.  Pl. Mem. at 16; Compl. ¶ 90 ("As Defendant still has not paid Plaintiff for his time spent engaged to wait, Defendant has violated NYLL §191(1)(d).").

Plaintiff's § 191 claim depends upon his right to be paid wages for time he spent waiting to be assigned work.  For the reasons stated above, however, plaintiff is not entitled to wages for time spent shaping up.

Moreover, although some district courts have decided otherwise, New York State courts and the Second Circuit have indicated that § 191 does not provide a cause of action for wages altogether withheld, as opposed to wages not timely paid.  In *Myers*, the Second Circuit noted that

> New York courts have suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they claim to be entitled under a statute; rather § 191 guarantees only that the wages the employer and employee have agreed upon be paid in a timely manner again according to the terms of [the employee's] employment.

*Myers v. Hertz Corp.*, 624 F.3d 537, 545 n.1 (2d Cir. 2010) (internal quotation marks omitted); *see also Perez-White v. Advanced Dermatology of New York P.C.*, 2016 WL 4681221, at *11 (S.D.N.Y. Sept. 7, 2016) (dismissing claim brought under Section 191 where plaintiff claimed her employer failed to provide her with full payment, and collecting cases); *Jara v. Strong Steel Door, Inc.*, No. 14643/05, 2008 WL 3823769, at * 12 (Sup. Ct. Kings Cty. Aug. 15, 2008) (dismissing claim brought under § 191 where it was undisputed that plaintiffs were paid some

14

amount on a timely and regular basis, and the "gravamen of plaintiffs' complaint [was] that the sums paid were not equal to what plaintiffs claim they were entitled to receive").

IV.    **Failure to Comply With Notice Requirements Under NYLL § 195(1)**

Finally, plaintiff contends that defendant failed to provide him with the notice required under NYLL § 195(1).  Compl. ¶¶ 94-95; Pl. Mem. at 18.  Section 195(1) provides that an employer must provide its employees, "at the time of hiring, a notice containing [among several other things] . . . the physical address of the employer's main office or principal place of business . . . [and] the telephone number of the employer."  Campbell asserts that, while Empire did provide him with a wage notice, the notice did not include Empire's physical address or telephone number.  Pl. Mem. at 18.  Notices provided by defendant in support of its motion appear to corroborate plaintiff's allegation; the notices describe defendant's pay practices but nowhere indicate its address or telephone number.  Declaration of Allen B. Roberts ("Roberts Decl."), Ex. 7, Docket Entry 42-7.

An employee is entitled to a civil remedy for a violation of § 195 only if he does not receive the required notice within ten days of his first day of employment.  NYLL § 198 (1-b).  Here, it appears that plaintiff received an earnings statement after working for one week that contained defendant's address and telephone number.  Roberts Decl., Ex. 8, Docket Entry 42-8.  Accordingly, I respectfully recommend that defendant's motion for summary judgment on plaintiff's claim under Section 195(1) be granted.

CONCLUSION

For the foregoing reasons, I respectfully recommend that defendant's motion for partial summary judgment be granted in part and terminated as moot in part.  More specifically, I respectfully recommend as follows:

15

a.  that defendant's motion be granted with respect to plaintiff's FLSA claim to be paid wages for time spent waiting as part of Empire's shape-up procedure prior to receiving a work assignment;

b.  that defendant's motion be granted with respect to plaintiff's claim for failure to pay wages under NYLL § 191;

c.  that defendant's motion be granted with respect to plaintiff's claim for wage notice violations under NYLL § 195(1); and

d.  that defendant's motion be terminated as moot with respect to plaintiff's spread-of-hours claim, and that the spread-of-hours claim be dismissed.

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before September 10, 2018.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

_____/s/_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
August 27, 2018

*U:\#DJM 2017-2018\Campbell v. Empire Merchants LLC 16-CV-5643 (ENV)\Campbell v. Empire Merchants, LLC 16-CV-5643 (ENV) - FINAL.docx*